UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASHONTA A. TRICE,

        Petitioner,

v.                                          CASE NO. 04-CV-74575-DT
                                            HONORABLE VICTORIA A. ROBERTS

KURT JONES,

        Respondent.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Lashonta A. Price has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. Respondent opposes the petition, and the Court has concluded that Petitioner's claims do not entitle him to the writ of habeas corpus. Accordingly, the habeas petition will be denied.

### I. Background

Petitioner was charged in Wayne County, Michigan with the following crimes: assault with intent to commit murder, Mich. Comp. Laws § 750.83; armed robbery, Mich. Comp. Laws § 750.529; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. The charges arose from an incident on January 14, 2000, when two men forced their way into Larry Wynn's home in Detroit, Michigan. As explained by the Michigan Court of Appeals,

> the complainant, Larry Wynn, testified that he had known defendant for approximately three to five years. Wynn knew defendant from the neighborhood and from working with him at a local party store. Wynn stated that defendant had introduced him to defendant's cousin, Gordon Mitchell; the complainant and Mitchell had a history of prior confrontations. Wynn testified that on January 14, 2000, defendant came by his place of employment and asked to borrow twenty dollars. In response to this request, Wynn told defendant to come by his house later that evening. At approximately 8:30 p.m., he answered his doorbell and talked to defendant via the intercom and saw that defendant was standing alone on the front porch. When the complainant opened the front door, Mitchell jumped

> over the banister and started shooting a handgun. Wynn was struck several times and defendant then grabbed him and forced him into the house. Once inside, Mitchell and defendant began ransacking the house. Defendant took four hundred dollars out of Wynn's pockets, and the complainant was shot at least three more times in the chest and leg. Shortly thereafter, the assailants left and a neighbor who heard the commotion called the police. Following a ten-day stay in the hospital, Wynn contacted the police and identified defendant and his cousin as the perpetrators.
>
> Defendant testified at trial and denied any involvement in these events. He maintained that he had a job and worked on the day in question, thus he had no reason to borrow money from the complainant. Defendant testified that he was not at Wynn's house on the night in question.

*People v. Trice*, No. 237170, at 1-2 (Mich. Ct. App. July 24, 2003) (unpublished opinion).

Petitioner did not contest the fact that Gordon Mitchell was one of the two men who committed the crimes. The primary issue at trial was whether Petitioner was the other man. The jurors apparently believed that he was, for they convicted Petitioner as charged on June 9, 2001.

The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of fifteen to twenty-five years for the assault and armed robbery convictions and four to twenty years for the home invasion conviction. Petitioner appealed his convictions as of right and then moved to remand the case for an evidentiary hearing on his claim of ineffective assistance of trial counsel. The Michigan Court of Appeals denied Petitioner's motion to remand and affirmed Petitioner's convictions. *See id.* On February 27, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Trice*, 469 Mich. 1014; 676 N.W.2d 631 (2004) (table).

Petitioner filed his habeas corpus petition on November 23, 2004. The grounds for relief read:

> I.  The Michigan Court of Appeals unreasonably applied clearly established U.S. Supreme Court precedent when it determined that Petitioner was not denied his rights, where counsel failed to

2

>    present or even interview witnesses for his defense.
>
> II.   The Michigan Court of Appeals unreasonably applied clearly established U.S. Supreme Court precedent when it determined that Petitioner was not denied his rights, where counsel failed to object to the omission in the jury instruction regarding the proper use and effect of the prior inconsistent statements of the complaining witness.
>
> III.   The Michigan Court of Appeals unreasonably applied clearly established U.S. Supreme Court precedent when it determined that Petitioner was not denied his rights, where the evidence was insufficient to support a finding of guilt beyond a reasonable doubt.
>
> IV.   The Michigan Court of Appeals unreasonably applied clearly established U.S. Supreme Court precedent when it determined that Petitioner was not denied his rights, where appellate counsel failed to elicit a response from trial counsel for not interviewing and or calling defense witnesses on his behalf prior to the submitting of a motion for remand.

Respondent argues in an answer to the habeas petition that Petitioner's attorneys were not ineffective and that the evidence was sufficient to support the convictions under attack.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

3

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

#### A. Defense Counsel's Failure to Interview Witnesses

The first habeas corpus claim alleges that Petitioner was deprived of his right to present a defense and his right to effective assistance of counsel because his trial attorney failed to interview and present any defense witnesses. Petitioner alleges in an affidavit dated March 11, 2002, that, at least four weeks before trial, he asked his attorney to contact his mother, Naomi Trice Mason, and his girlfriend, Shonetrell Turley, about testifying. Petitioner claims that his attorney never contacted these potential witnesses.

#### 1. *Strickland v. Washington*

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and concluded that Petitioner was not deprived of a substantial defense, but a weak one at best, and that he also was not deprived of effective assistance of trial counsel. To prevail on a claim of ineffective assistance, Petitioner must show that the state court's conclusion was an unreasonable

4

application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court explained in *Strickland* that the test for ineffective assistance has two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. "If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to examine the remaining prong of the test." *Barnes v. Elo*, 339 F.3d 496, 502 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 697), *cert. denied*, 540 U.S. 1164 (2004).

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. Failure to investigate key evidence is inexcusable if the omission was the result of inattention or negligence, not reasoned strategic judgment. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992). "[E]yewitness evidence is 'precisely the sort of evidence that an alibi

5

defense refutes best,'" and "the failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Bigelow v. Williams*, 367 F.3d 562, 575, 570 (6th Cir. 2004).

### 2. The Potential Witnesses' Affidavits

The record before the Court is silent on whether defense counsel actually was aware of Petitioner's desire to use his mother and girlfriend as witnesses. If Petitioner did notify his attorney of those potential witnesses, as he says he did, there is no indication in the record as to why the attorney rejected his suggestion. The attorney stated during *voir dire* that she had no potential witnesses (Tr. June 14, 2001, at 7), and there was no evidentiary hearing on Petitioner's ineffective-assistance-of-counsel claim in state court. The Court finds it unnecessary to hold an evidentiary hearing because, even assuming that defense counsel failed to investigate known alibi witnesses, the allegedly deficient performance did not prejudice the defense.

Petitioner's mother states in her affidavit that she overheard Gordon Mitchell tell several people that he was responsible for the attack on Larry Wynn. This information would not have aided Petitioner's defense, because no one denied that Gordon Mitchell was one of the men who invaded Larry Wynn's home and shot him. Wynn testified that Mitchell was one of the perpetrators of the crimes, and defense counsel conceded in her opening and closing statements that Mitchell was involved in the crimes. The question was the identity of the other perpetrator.

Shonetrell Turley's affidavit states that she overheard Gordon Mitchell tell Petitioner that he (Mitchell) was responsible for the attack on Larry Wynn. Ms. Turley further states in her affidavit that Petitioner could not have been involved in the shooting incident because he was at home with her on the night of the crimes.

Petitioner testified that he went home after work on January 14, 2000, and that he did not leave home to go to Larry Wynn's residence. He did not say whether he stayed home all night,

6

and he never mentioned that Mitchell stopped by and informed him that he was responsible for the attack. If Petitioner actually was at home when the crimes were committed and if Mitchell subsequently admitted his guilt to Petitioner, one would expect Petitioner to testify accordingly.

Furthermore, neither Petitioner's mother, nor his girlfriend, were disinterested witnesses, and the jury likely would have viewed their testimony as biased. Ms. Turley's testimony would have been suspect for an additional reason. Petitioner was not arrested until a year after the crimes occurred, and Ms. Turley has not provided any basis in her affidavit for being able to remember what Petitioner was doing over two years earlier on January 14, 2000.

Although the only evidence linking Petitioner to the shooting was Larry Wynn's eyewitness testimony, Wynn testified that he knew Petitioner for three to five years before the shooting incident. Wynn knew Petitioner from the neighborhood and from working with him. Wynn also identified Petitioner and Gordon Mitchell from a photo array before trial, and he was positive that Petitioner was one of the two men who assaulted him on January 14, 2000. He claimed that Petitioner and Gordon Mitchell were present in the neighborhood "constantly" and that he knew who shot him, although he did not know Petitioner's real name. (Tr. June 18, 2001, at 29 and 66.) Petitioner himself testified that he had known Larry Wynn for about ten years. (*Id*. at 134.) Thus, the prosecution's case was strong.

Furthermore, "§ 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state court-decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)) (quotation marks omitted). The cases in which the United States Court of Appeals for the Sixth Circuit has found defense attorneys to be ineffective for failing to investigate or pursue an alibi defense are distinguishable on the facts or because the Sixth Circuit was not required to defer to the state court's decision pursuant to §

7

2254(d).

For example, in *Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005), no state court adjudicated the merits of the petitioner's ineffective assistance claim, and the eyewitness's identification of the petitioner was admittedly tentative. The eyewitness identification was based solely on the petitioner's height and weight, which were similar to the height and weight of the petitioner's brother, who was implicated in the crime, but not placed in a lineup. And in *Clinkscale v. Carter*, 375 F.3d 430, 445 (6th Cir. 2004), *cert. denied*, 543 U.S. 1177 (2005), the Court of Appeals concluded that the petitioner had proved prejudice from his attorneys' failure to file a timely alibi notice because there were "notable weaknesses in the prosecution's case" and the accuracy of the eyewitness's identification was "highly suspect."[1]

The Court believes that the outcome of Petitioner's trial likely would not have been different if Petitioner's mother and girlfriend had testified. They were not disinterested witnesses, and Petitioner did not testify in accordance with their affidavits. Therefore, defense counsel's allegedly deficient performance did not prejudice the defense, and the Michigan Court of Appeals did not unreasonably apply *Strickland* when it concluded that trial counsel was not ineffective.

### B. Failure to Object to the Jury Instructions

The second habeas claim alleges that defense counsel should have objected when the trial

---

[1] *See also Matthews v. Abramajtys*, 319 F.3d 780 (6th Cir. 2003) (a post-AEDPA case in which the Sixth Circuit determined that defense counsel was ineffective for failing to assert an alibi defense, but where the evidence was not overwhelming, there were no eyewitnesses to the crime, and there was only an equivocal identification of the petitioner as one of three armed men seen running down the street shortly after the crime occurred) and *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987) (a pre-AEDPA case in which the Sixth Circuit found that the combined errors of defense counsel, including counsel's failure to investigate a potential alibi witness, deprived the petitioner of effective assistance of counsel where the evidence was not overwhelming and an eyewitness's identification testimony was not reliable).

court failed to instruct the jury on the proper use and effect of Larry Wynn's prior inconsistent statements. Petitioner raised this claim in state court as an error on the part of the trial court. The Michigan Court of Appeals stated that the claim was not preserved for appellate review because Petitioner made no request for a limiting instruction and no objection to its omission.[2]

As previously explained, to prevail on a claim of ineffective assistance, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. A habeas petitioner is not prejudiced by his attorney's failure to request a jury instruction on the impeachment of witnesses by prior inconsistent statements when the instruction given by the court and counsel's arguments put the issues squarely before the jury. *Millender v. Adams*, 376 F.3d 520, 526 (6th Cir. 2004).

Petitioner has not identified Larry Wynn's prior inconsistent statements. In state court, he cited portions of the transcript of trial where it was shown that Wynn gave an unresponsive answer at the preliminary examination. Petitioner also cited testimony, which demonstrated that Wynn failed to explain certain details of the crimes to the police or described the crime to the police differently from the way he testified about the crime at trial.

Petitioner asserts that his attorney should have asked to have the following instruction read to the jury:

> (1) There has been some evidence that a witness made an earlier statement that did not agree with his testimony during trial.

---

[2] Petitioner has raised the claim here as ineffective assistance of counsel. Although he did not raise his claim under the same theory in state court, the Court has concluded that the claim lacks merit. Therefore, the Court will excuse the failure to exhaust state remedies for the claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure to the applicant to exhaust the remedies available in the courts of the State.") The Court will proceed to address the substantive merits of Petitioner's claim. Because no state court considered whether defense counsel was ineffective for failing to object to the jury instructions, this Court must address the issue *de novo*. *Clinkscale*, 375 F.3d at 436.

9

   (2) You must be very careful about how you consider this evidence. The statement was not made during trial, so you must not consider it when you decide whether the elements of the crime have been proven. On the other hand, you may use it to help you decide whether you think the witness is truthful.

   (3) Consider the statement carefully. Ask yourself if the witness made the statement, whether it was true, and whether it differs from the witness' testimony here in court. Then remember that you may only use it to help you decide whether you believe the witness' testimony here in court.

Brief in Support of Habeas Pet. at 16-17.[3]

Although the trial court did not read this instruction to the jury, it did instruct the jury on how to evaluate witnesses' testimony. Included in that instruction was a directive to decide which witness's testimony to accept when the testimony of witnesses did not agree. The jurors were instructed that they could conclude that a witness deliberately lied about something important and that they could choose not to accept anything that the witness said. (Tr. June 18, 2001, at 180-81.) Thus, the instructions actually read to the jury permitted the jurors to conclude

---

[3] The jury instruction on prior inconsistent statements was amended in September of 2003. It currently reads:

[*Use the following paragraph if the statement was admitted only to impeach the witness.*]

   (1) If you believe that a witness previously made a statement inconsistent with [his / her ] testimony at this trial, the only purpose for which that earlier statement can be considered by you is in deciding whether the witness testified truthfully in court. The earlier statement is not evidence that what the witness said earlier is true.

[*Use the following paragraph is the statement was admitted both to impeach the witness and as substantive evidence.*]

   (2) Evidence has been offered that one or more witnesses in this case previously made statements inconsistent with their testimony at this trial. You may consider such earlier statements in deciding whether the testimony at this trial was truthful and in determining the facts of the case.

CJI2d 4.5.

10

that Larry Wynn was not credible because his testimony differed from his prior statements to the police.

Petitioner claims that the instruction on witness credibility was insufficient to protect his rights. The Court disagrees, because the alleged discrepancies between Wynn's trial testimony and his prior statements to the police were fully explored at trial. The jury was made aware of Wynn's failure to provide the police with certain details that he mentioned at trial and Wynn's unresponsive answer at the preliminary examination concerning the date of the criminal incident. The Court therefore concludes that defense counsel's failure to object to the jury instructions as given did not prejudice the defense. Petitioner is not entitled to the writ of habeas corpus on the basis of his second claim.

## C. Sufficiency of the Evidence

The third habeas claim alleges that the evidence adduced at trial was insufficient to support Petitioner' convictions. Petitioner contends that Larry Wynn's testimony was inherently incredible because it contradicted the testimony of other witnesses and because Wynn failed to mention certain details to the police, such as the fact that the men robbed him and ransacked his home. As for the charged crimes, Petitioner alleges that there was no evidence of a specific intent to rob him or to invade his home and there was no evidence that he possessed a firearm or assisted Gordon Mitchell in obtaining, possessing, or retaining a firearm.

The Michigan Court of Appeals adjudicated Petitioner's sufficiency-of-the-evidence claim on the merits. It concluded that the evidence was clearly sufficient to support the felony firearm conviction and that the prosecutor produced sufficient evidence to sustain the other convictions as well.

The critical inquiry on habeas review of the sufficiency of the evidence to support a

11

criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

### 1. Elements of the Offenses

In Michigan, "[t]he elements of assault with intent to commit murder are (1) an assault, (2) with the specific intent to commit murder, (3) which, if successful, would make the killing murder." *People v. Beard*, 171 Mich. App. 538, 541; 431 N.W.2d 232, 233 (1988). Intent to kill for purposes of this offense may be inferred from any facts in evidence. *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Hoffman*, 225 Mich. App. 103, 111; 570 N.W.2d 146, 150 (1997)). When determining intent, courts may take into consideration

> the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

*Id.* (quoting *People v. Taylor*, 422 Mich. 544, 568; 375 N.W.2d 1, 8 (1985)).

"The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 206 Mich. App. 122, 123; 520 N.W.2d 672, 673 (1994). "Armed robbery is a specific intent crime for which the prosecutor must establish that

12

the defendant intended to permanently deprive the owner of property." *People v. King,* 210 Mich. App. 425, 428; 534 N.W.2d 534, 536 (1995).

    The statute on first-degree home invasion provides that:

(2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2). Finally, "[t]he elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 235 Mich. App. 499, 505; 597 N.W.2d 864, 869 (1999).

    The prosecutor's theory was that Petitioner committed the crimes or aided and abetted Gordon Mitchell in committing the crimes. The aiding and abetting statute abolished "the common law distinction between accessories before the fact and principals so that one who counsels, aids or abets in the commission of an offense may be tried and convicted as if he had directly committed the offense." *People v. Palmer*, 392 Mich. 370, 378; 220 N.W.2d 393, 396 (1974). The Michigan Supreme Court recently held that, "when the Legislature abolished the distinction between principals and accessories, it intended for all offenders to be convicted of the intended offense . . . as well as the natural and probable consequences of that offense . . . ." *People v. Robinson*, 475 Mich. 1, 9; 715 N.W.2d 44, 49 (2006). "The phrase 'aiding and abetting' describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which may support, encourage or incite the commission of a

13

crime." *People v. Rockwell*, 188 Mich. App. 405, 411-12; 470 N.W.2d 673, 676 (1991).

## 2. The Evidence

Larry Wynn testified that, on January 14, 2000, he told Petitioner to stop by his home after work because Petitioner wanted to borrow $20.00 from him. About 8:30 p.m., the doorbell rang, and he spoke to Petitioner over the intercom. He recognized Petitioner's voice, and he saw Petitioner standing alone on the porch. He could see Petitioner's face clearly through the window. When he opened the door, Gordon Mitchell jumped across the bannister, pulled out a gun, and starting shooting at Wynn. Petitioner was standing a little closer to Wynn than Mitchell. After Mitchell fired at Wynn, Petitioner grabbed Wynn by the neck and pushed him back into the house. Petitioner reached into his belt like he had a gun. Wynn was then shot three more times. Mitchell came in the house, grabbed Wynn by the neck, and put a gun to his head with the other hand. Mitchell said that he should have killed Wynn a long time ago, and he instructed Petitioner to ransack the house. Petitioner took about $400.00 from Wynn's pocket. Wynn claimed that he heard two different guns fire.

The police officer who responded to the scene reported that an unknown black man was the perpetrator, but Larry Wynn testified that he mentioned two names to the police. His speech was impaired at the time due to gunshot wounds to his jaw and the fact that he was holding a towel over his mouth.

Wynn knew Petitioner as Tony or "Tone" Mason and, after he was released from the hospital, he told an investigator that Tony Mason and Gordon Mitchell were the men who robbed and assaulted him. He did not tell the investigator some of the details of the incident because the investigator did not ask about all the details and he assumed that the investigator had read the responding officers' report. He was unable to identify Petitioner from some faded black and white photographs that were shown to him, but he immediately recognized Petitioner when a

14

colored photograph was shown to him at a later time. It was then that he and the police determined Petitioner's real name.

### 3. Application

A rational trier of fact could have concluded from the evidence as summarized above that Petitioner was one of the two men who entered Larry Wynn's home and then robbed him at gunpoint and shot him several times. A rational trier of fact also could have determined that the prosecutor proved the essential elements of each of the charged offenses.

An assault occurred when Gordon Mitchell placed a gun next to Wynn's head. The firing of handguns and the comment that Mitchell should have killed Wynn long ago was evidence of an intent to kill, and if Wynn had died, the shooting would have been murder. Thus, the elements of assault with intent to commit murder were satisfied.

The elements of armed robbery were satisfied because there was evidence that an assault occurred, that money was feloniously and permanently taken from Wynn, and that at least one of the men was armed with a gun. The elements of first-degree home invasion were satisfied by testimony that the two men entered Wynn's home without permission and committed a felony while armed with dangerous weapons and while Wynn was present. The jury could have inferred from the forceful entry into Wynn's home, as well as the fact that Petitioner supposedly needed money, that Petitioner intended to rob and to invade Wynn's home. *See Jackson*, 443 U.S. at 319 (explaining that the standard announced in *Jackson* "gives full play to the responsibility of the trier of fact . . . to draw reasonable inferences from basic facts to ultimate facts").

Petitioner alleges that there was no evidence that he possessed or assisted the co-defendant in acquiring, possessing, or retaining the firearm involved in the crimes. Although Larry Wynn admitted that he never saw a gun in Petitioner's hand, Wynn saw Petitioner reach

15

into his waistband as though he were going to pull out a gun, and he heard two different guns fire. The jury was entitled to infer that Petitioner pulled a gun from his waistband and fired it at Wynn. *See id*.

Petitioner maintains that the identification testimony was suspect and that there were inconsistencies in Larry Wynn's testimony. The alleged discrepancies, however, were brought to the jurors' attention, and "it was not irrational for the jury to accept the prosecutor's evidence as establishing guilt beyond a reasonable doubt." *Tinsley v. Million*, 399 F.3d 796, 815 (6th Cir. 2005), *cert. denied*, __ U.S. __, __, 126 S. Ct. 760 (2005). Moreover,

> [i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The jurors could have rationally concluded that Petitioner committed the charged crimes or aided and abetted Gordon Mitchell in committing the crimes. Therefore, the state appellate court's conclusion that the evidence was sufficient to sustain Petitioner's convictions was a reasonable application of the *Jackson* standard and a reasonable determination of the facts.

### D.  Appellate Counsel

The fourth and final habeas claim alleges that, before filing a motion for remand, Petitioner's appellate attorney should have contacted Petitioner's trial attorney to determine why trial counsel did not interview or call any defense witnesses. Petitioner states that it was appellate counsel's duty to supplement the record, investigate the facts, and develop the claim. Petitioner alleges that appellate counsel's failure to do so severely limited an assessment of the claim.

The Michigan Court of Appeals adjudicated this claim on the merits and concluded that

the record did not support Petitioner's argument that appellate counsel's performance fell below an objective standard of reasonableness.  The court of appeals further concluded that Petitioner was not prejudiced by appellate counsel's performance, because trial counsel was not ineffective.

"A defendant is entitled to the effective assistance of counsel in his first appeal of right," and the same standard that is used to evaluate trial counsel's performance is used to judge an appellate attorney's performance.  *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004).  Thus, to establish ineffective assistance of appellate counsel, Petitioner must show that his appellate attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

The Court has already determined, as did the Michigan Court of Appeals, that trial counsel's performance did not prejudice the defense.  Therefore, appellate counsel was not ineffective for failing to supplement the record and to raise a claim of ineffective assistance of trial counsel.  "[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).  The Michigan Court of Appeals did not unreasonably apply *Strickland* when it concluded that Petitioner's appellate attorney was not ineffective.

## IV.  Conclusion

The state court's conclusions did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.  Nor did the state court unreasonably apply the facts.  Therefore, Petitioner is not entitled to habeas relief, and his application for the writ of habeas corpus is DENIED.

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

17

Dated:  July 31, 2006

The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on July 31, 2006.

S/Carol A. Pinegar
Deputy Clerk